UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAKISHIA FLOWERS
o/b/o J.K.G., a minor,

    Plaintiff,

v.                                                 Case No. 8:22-cv-195-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her minor child's (Claimant) claim for Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

    **A.**    **Procedural Background**

Plaintiff filed an application for SSI on behalf of Claimant (Tr. 177–82). The Social Security Administration ("SSA") denied Claimant's claim both initially and

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

upon reconsideration (Tr. 81–86, 90–97). Plaintiff then requested an administrative hearing (Tr. 105–07). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff and Claimant appeared and testified (Tr. 24–48). Following the hearing, the ALJ issued an unfavorable decision finding Claimant not disabled and accordingly denied Plaintiff's claim for benefits (Tr. 7–19). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 1383(c)(3).

### B.  Factual Background and the ALJ's Decision

Claimant, who was born in November 2007, claimed disability beginning June 1, 2018 (Tr. 177, 223). Claimant alleged disability due to ADHD and learning problems (Tr. 207, 223). In rendering the administrative decision, the ALJ concluded that Claimant was a school-age child on May 3, 2019, the date the application was filed, and had not engaged in substantial activity since the application date (Tr. 11). After conducting a hearing and reviewing the evidence of record, the ALJ determined Claimant had the following severe impairments: attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (Tr. 11). Notwithstanding the noted impairments, the ALJ determined Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ also determined that Claimant did not have an impairment or

combination of impairments that functionally equaled the severity of the listings (Tr. 13). In doing so, the ALJ found Claimant had:

- less than a marked limitation in acquiring and using information;
- less than a marked limitation in attending and completing tasks;
- less than a marked limitation in interacting and relating with others;
- no limitation in moving about and manipulating objects;
- less than a marked limitation in the ability to care for himself/herself; and
- no limitation in health and physical well-being

(Tr. 14). In making that finding, the ALJ indicated that he considered all of the relevant evidence in the record, including objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; Claimant's statements (including statements from Claimant's parent(s) or other caregivers); and any other relevant evidence in the record, including how Claimant functioned over time and in all settings (i.e., at home, at school, and in the community) (Tr. 14).

## II.

To be entitled to benefits, an individual under the age of 18 must demonstrate that he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). Similar to the approach taken with adults, the Commissioner assesses child

disability claims under a sequential analysis. 20 C.F.R. § 416.924(a). The first step requires the Commissioner to determine whether the child is performing substantial gainful activity. 20 C.F.R. § 416.924(b). If so, a finding of not disabled is warranted. 20 C.F.R. § 416.924(a) & (b). If not, the second step asks whether the child has a severe impairment. 20 C.F.R. § 416.924(a) & (c). If the child does not have a severe impairment, the child is considered not disabled. 20 C.F.R. § 416.924(a) & (c). If a severe impairment exists, the third and final step in the analysis involves a determination of whether the child has an impairment that meets, medically equals, or functionally equals a set of criteria in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(a) & (d).

For a child's impairment(s) to functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(a). A child has a "marked" limitation in a domain when the impairment(s) interferes seriously with his or her ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). A child has an "extreme" limitation when the child's impairment interferes very seriously with the child's ability to independently initiate, sustain, or complete activities, and the limitation is "more than marked." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation is assigned only to the worst limitations but does not necessarily mean a total lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(3)(i).

In assessing functional equivalence, the Commissioner considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi), (g)-(l).  These domains represent broad areas of functioning intended to capture all of what a child can or cannot do.  Social Security Ruling ("SSR") 09-1P, 2009 WL 396031, at *1 (Feb. 17, 2009).  Stated simply, if a child has an impairment that meets, medically equals, or functionally equals a listed impairment, and the impairment meets the duration requirement, the child will be found disabled.  20 C.F.R. § 416.924(a) & (d)(1).  Conversely, if the child does not have such impairment, or it does not meet the duration requirement, the child will be found not disabled.  20 C.F.R. § 416.924(a) & (d)(2).

As with claims by adults, a determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal

5

conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues the ALJ erred in assessing the functional domains of (1) interacting and relating with others, and (2) attending and completing tasks. For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

**A.     Interacting and Relating with Others**

First, Plaintiff challenges the ALJ's decision contending the ALJ erred in assessing the domain of interacting and relating with others (Doc. 19 at 4). Specifically, Plaintiff argues the ALJ mischaracterized two teacher assessments and

failed to consider a third teacher assessment and Claimant's discipline record for the 2019–2020 school year (*id.*).  Additionally, Plaintiff argues the ALJ did not consider Claimant's "marked limitations interacting with adults, especially those in authority" focusing instead on relations with other children (*id.* at 8–9).  Finally, Plaintiff contends the ALJ improperly considered evidence prior to the relevant adjudication period (*id.* at 9).  In response, the Commissioner argues the ALJ properly considered all of the evidence together and his decision is supported by substantial evidence (Doc. 21 at 6–10).  Because the Court finds the ALJ failed to consider more recent evidence relevant to the domain of interacting and relating with others, it will not address Plaintiff's remaining arguments as the ALJ's analysis may change upon remand and consideration of the evidence.

When evaluating a child's limitations in the domain of "interacting and relating with others," the SSA considers how well the child is able to initiate and sustain emotional connections with others, cooperate with others, and respect and take care of the possessions of others.  *See* 20 C.F.R. § 416.926a(i).  Also considered is the child's ability to develop and use the language of her community, comply with rules, and respond to criticism.  *See id.*  SSR 09-5P provides, in part:

> In the domain of "Interacting and relating with others," we consider a child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others.  This domain includes all aspects of social interaction with individuals and groups at home, at school, and in the community.  Important aspects of both interacting and relating are the child's response to persons in authority, compliance with rules, and regard for the possessions of others.  In addition, because communication is essential to both interacting and relating, we consider in this domain

> the speech and language skills children need to speak intelligibly and to understand and use the language of their community.

SSR 09-5P, 2009 WL 396026, at *2 (Feb. 17, 2009). "To interact effectively with others, children must understand how to approach another person or a group of people, and must know how to respond in an age-appropriate manner to others who approach them." *Id.*, at *3. Additionally, "when interacting with a parent, teacher, or other adult, the child needs to convey respect for the adult." *Id.*

An adolescent (age twelve to attainment of age eighteen) should: (1) initiate and develop friendships with children of the same age; (2) relate appropriately to children of all ages and adults, both individually and in groups; (3) increasingly be able to resolve conflicts between self and family members, peers, and others outside of family; (4) recognize that there are different social rules for dealing with other children than with adults (for example, behaving casually with friends, but more formally with people in authority); (5) describe feelings, seek information, relate events, and tell stories in all kinds of environments (for example, at home or in school) and with all kinds of people (for example, parents, siblings, friends, or classmates); (6) develop increasing desire for privacy; and (7) focus less attention on parents and more on relationships with peers. *See id.*, at *6; 20 C.F.R. § 416.926a(i)(2)(v). In contrast, a child with an impairment might have no close friends her age, or have difficulty cooperating with others, playing games or sports with rules, or communicating with others. SSR 09-5P, 2009 WL 396026, at *7; 20 C.F.R. § 416.926a(i)(3).

Here, in support of his finding that Claimant had less than a marked limitation in interacting with others, the ALJ stated:

> Regarding the domain of interacting with others, the claimant has less than marked limitations. While Ms. Flowers alleged that the claimant has problems interacting with others, the claimant testified that she has many friends and that she gets along okay with her siblings. In the more recent available treatment records, described her behavior as being stable/normal as discussed previously (Exhibit 2F). Her moods were described as stable on medication. In a Teacher's Questionnaire at Exhibit 8E, it was noted that the claimant has a serious problem playing cooperatively with other children and some obvious problems in other areas within this domain but no problem asking permission appropriately, relating experiences and telling stories, using language appropriate to the situation and listener, taking turns in a conversation, and using adequate vocabulary. In a Teacher's Questionnaire at Exhibit 14E, some very serious and serious problems were indicated, but the claimant was also indicated that the claimant has no problems making and keeping friends, relating experiences and telling stories or in interpreting facial expression or body language. In a Teacher's Questionnaire at Exhibit 15E, her teacher reported that the claimant has some very serious problems but also indicated only slight problems making and keeping friends, using adequate vocabulary, and in interpreting facial expression/body language. Drs. Silver and Reddy [sic] opined that the claimant only has a less than marked limitation interacting with others

(Tr. 18). Thus, in making his determination, the ALJ relied first on Claimant's testimony that "she has many friends and that she gets along okay with her siblings" (Tr. 18, 45). Second, the ALJ relied on "the more recent available treatment records," which the ALJ found "described her behavior as being stable/normal as discussed previously[,]" and "[h]er moods were described as stable on medication" (Tr. 18). Third, the ALJ relied on three teacher questionnaires, namely an undated questionnaire, presumably from the 2018–2019 school year, from Claimant's 5th grade teacher, who indicated he had known Claimant for four years (Tr. 228–35),

9

and two questionnaires dated September 30, 2019, and October 24, 2019, respectively, from Claimant's 2019–2020 school year (Tr. 18, 260–67, 268–75). Finally, the ALJ considered and found persuasive the opinions of non-examining state agency psychological consultants, who opined that Claimant had a less than marked limitation interacting and relating with others (Tr. 16, 18, 54–57, 68–74).

Problematically, however, the ALJ failed to address some of the more recent medical and non-medical evidence. While the ALJ cited to the April 24, 2019 treatment record noting Claimant "ha[d] maintained reasonably stable behavior both at home and school with no recent problems with temper outbursts[,]" good grades (As, Bs, and 1 C), and stable moods (*see* Tr. 12, 18, 366), the ALJ did not consider a more recent treatment record dated September 25, 2019, indicating Claimant had been out of medications[2] for several months and "[p]roblems with focus, hyperactivity, and impulse control ha[d] significantly worsened in that period of time" (Tr. 375).[3] The September 25, 2019 treatment record further reveals

---

[2] To the extent the ALJ relies on Claimant's non-compliance with prescribed treatment in making a disability determination, he must first consider an explanation for Claimant's failure to comply with treatment. *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) ("the ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment").

[3] The Court notes that although a claimant may not collect SSI benefits for any period predating her application date, the ALJ could reasonably rely upon medical notes that postdate Claimant's alleged onset date of June 1, 2018. *See* 20 C.F.R. § 416.335; 20 C.F.R. § 416.912 ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."); *see also Rodriguez v. Comm'r of Soc. Sec.*, 737 F. App'x 514, 517

"[i]ssues [were] occurring both at home and at school" as Claimant "[was] getting into multiple conflicts per day at home" and "had several fights at school" (Tr. 375). Plaintiff reported "getting daily calls from school about disruptive behaviors" (Tr. 375).

Additionally, as Plaintiff argues, the ALJ failed to consider Claimant's disciplinary record from August 2019 through March 2020, indicating Claimant had been disciplined thirty times (Tr. 310), and had received in-school suspension for defiance/insubordination and suspension from bus for defiance/insubordination and profanity/obscene language (Tr. 307–10; *see also* Tr. 317 (school record dated September 24, 2020, indicating Claimant had received four in-school suspensions that month); Tr. 318). This evidence is consistent with Plaintiff's testimony that "[C]laimant started disrupting class and stopped cooperating" and "this has become worse as she has gotten older and that she is contacted frequently by [Claimant's] teachers" and "[C]laimant has detention 2 to 3 times per week because of disruptive behavior" and "ha[d] been suspended from school[,]" (Tr. 15, 31–32). The ALJ acknowledged Plaintiff's testimony, but found,

---

(11th Cir. 2018) (finding the ALJ erred in failing to consider medical evidence prior to the application date "which may have been relevant to determining whether [the plaintiff] had been disabled for 12 continuous months") (citing Program Operations Manual System ("POMS") DI 25505.025 ("The duration period can begin ... prior to the filing date in title XVI claims."); POMS DI 25501.370("[W]e [ ] consider the period before the filing date under certain circumstances, for example when determining if a claimant met the 12-month duration requirement.")).

11

without articulating consideration of some of the more recent evidence, that "[t]he record does not support the level of limitation alleged by [Plaintiff]" (Tr. 15–16).

Notably, the state agency psychological consultants, whose opinions the ALJ found persuasive, similarly failed to consider this evidence (*see* Tr. 16, 54–60, 68–74). As Plaintiff points out, Dr. Wendy Silver's opinion is dated July 21, 2019, prior to Claimant's 2019–2020 school year (Tr. 54–60). Dr. Sally Rowley's October 21, 2019 opinion relied on the same evidence as Dr. Silver, and therefore also failed to consider some of the more recent evidence (Tr. 54–60, 68–74). Indeed, in opining Claimant had less than marked limitations in interacting and relating with others, both Dr. Silver and Dr. Rowley acknowledged "school discipline report from 5/21/19 indicates [Claimant] had problems in 2013-15[,]" but noted there were no more recent reports (Tr. 56, 70). They both concluded the "behavior as reported is not consistent with more recent objective evidence" (Tr. 57, 70).

The Commissioner argues the ALJ is not required to discuss every piece of evidence (*see* Doc. 21 at 8 (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005))). However, the omission of these records is especially significant as they constitute evidence highly probative on the question of whether Claimant's behavioral problems caused her to be markedly limited in the domain of interacting and relating with others. *See Perez–Rosario ex rel. A.G.J. v. Comm'r of Soc. Sec.*, No. 6:07–cv–774–Orl–DAB, 2008 WL 1776569, at *5 (M.D. Fla. April 17, 2008) (emphasizing that "the regulations with respect to childhood disability require particularly meticulous review of *all* of the evidence of record and a particularly

12

clear explanation as to the ALJ's reasons for each finding, due to the requirement of specific findings in each domain") (emphasis added).  Moreover, if this relevant evidence is not mentioned, the Court cannot discern if the ALJ discounted or overlooked the evidence.  *See Winschel*, 631 F.3d at 1179 ("It is possible that the ALJ considered and rejected these two medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.").

For the foregoing reasons, the Court finds that the ALJ's determination regarding Claimant's limitation in interacting with others is not supported by substantial evidence and remands with instructions that the ALJ reassess the evidence concerning this limitation.

### B. Attending and Completing Tasks

Next, Plaintiff argues the ALJ erred in finding Claimant had less than marked limitations in the domain of attending and completing tasks (Doc. 19 at 10).  Specifically, Plaintiff contends the ALJ improperly relied on evidence "related to a time period prior to the period decided by the decision," "mischaracterized the evidence that did relate to the time period," and "failed to consider important evidence relating to the time period in question" (*id.*).  In response, the Commissioner argues the ALJ properly considered evidence preceding Plaintiff's application date, but subsequent to the alleged onset date (Doc. 21 at 11).  Additionally, the Commissioner argues Plaintiff "ha[d] not demonstrated a deterioration in Claimant's condition since her alleged onset date in June 2018"

13

(*id*.). Because the Court finds the ALJ failed to consider evidence probative to the domain of attending and completing tasks, it will not address Plaintiff's remaining arguments, as the ALJ's assessment may change upon consideration of the additional evidence.

In the domain of attending and completing tasks, the ALJ considers how well a child can focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the pace at which she performs activities and how easily she changes activities. 20 C.F.R. § 416.926a(h). An adolescent (age twelve to attainment of age eighteen) should be able to: (1) pay attention to increasingly longer presentations and discussions; (2) maintain her concentration while reading textbooks; (3) independently plan and complete long-range academic projects; (4) organize her materials and plan her time in order to complete school tasks and assignments; and (5) in anticipation of entering the workplace, maintain her attention on a task for extended periods of time, and not be unduly distracted by peers or unduly distracting to them in a school or work setting. 20 C.F.R. § 416.926a(h)(2)(v).

In his written decision, the ALJ determined the record supported a less than marked limitation under this domain (Tr. 17). In making this determination, the ALJ noted Plaintiff "told treatment providers that [Claimant's] medications work[ed] well, and that her focus, attention span, and hyperactivity were significantly improved with medication" (Tr. 17, 366). The ALJ also relied on Claimant's academic record indicating "[Claimant] ha[d] mostly made passing

grades including some A's and a B in math and reading" (Tr. 17 (citing Tr. 193, 220, 325, 366)). The ALJ further considered teacher questionnaires, stating:

> In a Teacher's Questionnaire completed at Exhibit 8E, some obvious problems were indicated but it was also reported that the claimant has no problems paying attention when spoken to directly, sustaining attention during playing sports/activities, and no problems carrying out single step instructions. In a Teacher's Questionnaire at Exhibit 14E, some very serious and serious problems within this domain were indicated but it was also noted that the claimant only has a slight problem organizing her own things and working at a reasonable pace/finishing on time. In a Teacher's Questionnaire at Exhibit 15E, some very serious problems and serious problems were indicated in this domain.

(Tr. 17, 230, 262, 270). Finally, the ALJ considered the state agency psychological consultants' opinions indicating Claimant had "only a less than marked limitation in this domain" (Tr. 17, 54–57, 68–74). The ALJ concluded "[w]hile the record does indicate that the claimant has some limitations in her ability to maintain attention, the reports regarding the effectiveness of her medication, her academic record, and the opinions of Drs. Silver and Rowley do not support a finding of greater than less than marked limitations in this domain" (Tr. 17).

As with the domain of interacting and relating with others, the ALJ focused mostly on evidence prior to the application date and did not consider some of the more recent treatment and school records from Claimant's 2019–2020 school year. For instance, while the ALJ relied on Claimant's 5th grade and early 6th grade academic record indicating she "mostly made passing grades including some A's and B's in math and reading," (Tr. 17 (citing Tr. 193, 220, 325, 366)), more recent school records show mostly D's and F's, including a grade of F in Reading (Tr. 311,

15

329).[4] Similarly, the ALJ relied on the April 24, 2019 treatment record finding "[Claimant's] focus, attention span, and hyperactivity were significantly improved with medication" (Tr. 17, 366). However, as discussed above, the ALJ failed to consider the September 25, 2019 treatment record showing Claimant had been out of medication and "[p]roblems with focus, hyperactivity, and impulse control ha[d] significantly worsened in that period of time" with teachers "reporting that [Claimant] [was] off task and often [would] not stay in her seat" (Tr. 375).

Moreover, the ALJ relied on a 5th grade teacher questionnaire revealing "[Claimant] ha[d] no problems paying attention when spoken to directly, sustaining attention during playing sports/activities, and no problems carrying out single step instructions" (Tr. 17, 228), but more recent teacher questionnaires revealed obvious to very serious problems in those areas (Tr. 262, 270, 287). Although the ALJ acknowledged some of the more recent teacher questionnaires, it appears he focused on the positive findings of the 5th grade teacher assessment instead. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("It is not enough to discover a piece of evidence which supports [a] decision, but to disregard other contrary evidence[,]" and a decision is not supported by substantial evidence when reached "by focusing upon one aspect of the evidence and ignoring other parts of the record").

The Commissioner argues "[t]he evidence is not significantly different before and after May 2019" (Doc. 21 at 11). However, Plaintiff testified "it got worse" as

---

[4] Although the ALJ stated at the hearing that Claimant "was failing science and other area where she was having difficulty in a number of other classes," (Tr. 30), he failed to acknowledge this evidence in his written decision to deny benefits.

Claimant was getting older (Tr. 31), and the more recent school and treatment records appear to support Plaintiff's testimony. Without the ALJ articulating his consideration of some of this evidence after May 2019, showing an exacerbation of symptoms, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). For the foregoing reasons, the Court finds that the ALJ's decision is not supported by substantial evidence.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and REMANDED with instructions to the ALJ to: (a) reassess all of the evidence, including treatment and school records, and reconsider Plaintiff's limitations in the six domains of functioning, if necessary, including the domains of interacting and relating with others and attending and completing tasks; and (b) conduct any further proceedings deemed appropriate.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 10th day of March, 2023.

*[signature]*

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record